REFINERS TRANSPORT COMPANY, INC. et al., Appellees,

*v.*

CAYCE PENTECOST et al., Appellants.

*(Nashville,* December Term, 1958.)

Opinion filed April 8, 1959.

GEORGE W. SHUFF, WALTER HARWOOD, Nashville, for appellants.

JAMES CLARENCE EVANS, JAMES C. HAVRON, Nashville, ALFRED T. MACFARLAND, Lebanon, RICHARD GLEAVES, Nashville, for appellees.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

The Tennessee Public Service Commission issued a certificate of public convenience and necessity to Frank C. Martin d/b/a Martin Propane Transport as a common carrier for the transportation of liquified petroleum gas, in bulk, in tank vehicles, between all points and places in Tennessee, over irregular routes.

Refiners Transport Company, Inc., W. H. Wooten d/b/a Wooten Transports, Direct Transport Company, Inc., Gasoline Transport Inc., W. M. Chambers Truck Line and Blue Ridge Transportation Company, all of whom are and were at the time of the hearing before the commission motor carriers operating in both interstate and intrastate commerce, and authorized to transport petroleum products including liquified petroleum gas in

bulk, in tank vehicles pursuant to proper authority, were parties in interest in the hearing before the commission. They obtained a review in the Chancery Court of Davidson County by process of *certiorari*. The Chancellor overruled the demurrer of Martin, held that there was no substantial evidence to support the order of the commission, and reversed the same. The matter is in this Court on appeal by Martin.

There are only two questions: One, was the demurrer to the *certiorari* petition properly overruled, and, two, is there any substantial evidence to support the order of the commission?

There is really no dispute about the facts but only as to the proper conclusion to be drawn from the undisputed evidence. It appears without dispute that liquid petroleum gas is a relatively new industry in Tennessee, and has enjoyed a rapid growth within the last few years. It is the propane type of gas which has to be transported under pressure in special equipment. Distributor witnesses testified that the business is seasonal to a certain extent and that due to the expense involved, they have not acquired the necessary storage facilities to keep on hand sufficient gas to meet all emergencies and that, therefore, it has been a practice among dealers in Tennessee to exchange gas and assist each other in maintaining a sufficient supply; in doing so they have been using small size trucks belonging to the individual dealers which they call "bobtail" trucks. At present there are no producers or manufacturers of propane gas within Tennessee; the entire source of supply moves from the southwest and from Doe Run, Kentucky; the shipments from the southwest, that is, from Louisiana, Texas,

and Oklahoma, are by rail in large quantities requiring an average of six days in transit from point of origin to Nashville, Tennessee.

There are about forty-five such distributors in Tennessee, some of whom are not equipped to receive rail shipments due to the location of their storage plant facilities, or to the limited capacity of the storage tanks, or both. Martin testified further without contradiction that he had talked to all of these distributors and had found that there was a definite need for the type of intrastate carrier service he proposed to furnish. In fact, four distributors testified to the same effect and Martin testified that he had requests from dealers in about ten counties, naming the counties and the persons. These distributors who testified said they wanted the service and that they would use the service regardless of who furnished it whether it was furnished by Martin or by the appellee common carriers.

It further appears without dispute that Martin has met all of the requirements for the issuance of said certificate. It further appears without dispute that the protestant appellees already have units of the specialized type available and were ready and willing to perform the services here sought to be performed by Martin, but it appears without contradiction that none of the protestants had ever filed any tariffs in this connection until after the filing of Martin's petition; none of them had solicited any movement of propane gas among Tennessee dealers; none had moved any except a special limited movement by and between two companies belonging to Wooten. It further appears that none of the protestant carriers knew of any demand for such service.

. None of the protestant carriers are authorized to serve the entire State of Tennessee, but propose to perform said services through certain interchange agreements.

Martin testified without dispute that the operation of such an intrastate service by itself would not be profitable, but owing to the fact that he presently holds interstate permit No. 1855 granted by this Tennessee Commission to transport commodities here involved between Doe Run, Kentucky, to points in eight counties in middle Tennessee, he could make the service profitable for himself in that, although his headquarters are at McMinnville, he could make some runs directly from McMinnville to a distributor and then, without doubling back to McMinnville, proceed to Doe Run, Kentucky, for an interstate trip.

Upon this record the commission issued the certificate.

▇ As to the demurrer, it was based upon the language of a part of T.C.A. sec. 65-1507, subsection (a), beginning in the first line of page 731 of said Code, in which it is said:

"In determining whether or not a certificate of convenience and necessity should be issued, the commission shall give reasonable consideration to the transportation service *being furnished* by any railroad, street railroad or motor carrier on the route or in the territory in which the applicant proposes to operate, the service to be rendered and/or capable of being rendered by the applicant, the financial condition and character of the applicant, the character of the highways over which said applicant proposes to operate and the effect thereon and upon the traveling public using said highways, the public demand or need for the

service proposed, the likelihood of the proposed service being permanent and continuous, the effect which such proposed transportation service may have upon *other transportation service being rendered,* and all other pertinent facts.''

The crux of the demurrer is, that, since none of these protestants had ever rendered any service and were not rendering any at the time, their petition for *certiorari* was demurrable.

We think there is no merit to the demurrer. That question of service being furnished is simply one of the elements to be considered along with all other pertinent facts and perhaps the commission in this case did take that fact into consideration as well as the testimony of Martin that the business was profitable except in the manner he proposed to operate, and perhaps the further fact that the operation by Martin could have no appreciable or harmful effect on the protestants, along with the fact that the protestants have no right to a monopoly and must be subject to proper competition.

██ As to the second question however, we are definitely of the opinion that there is substantial evidence to support the action of the commission. Accordingly the decree of the Chancellor is reversed and the order of the commission is reinstated with costs against the protestants.